DECISION. *Page 2 
{¶ 1} In four assignments of error, defendant-appellant Reginald Rice claims that he was improperly convicted of robbery[1] and kidnapping.[2] For the reasons set forth below, we disagree and affirm his convictions.
 Evening Stroll Results in Robbery {¶ 2} While walking home from a birthday party at midnight on January 18, 2008, Michael Cervay realized that two people were following him. He turned slightly and was able to discern that both were men, one was black and one was white. Cervay sensed that the men were getting closer, so he stepped aside to let them pass. The men grabbed his hood and pulled it over his head. They then grabbed his arms. They told him to keep his head down and hand over his wallet. Cervay was told repeatedly to comply, that the men had a gun, and that they would use it if he did not cooperate. Cervay gave the men his wallet because he believed they had a gun.
 {¶ 3} The men were disappointed in the amount of cash Cervay had in his wallet, but saw that he had a credit card. They took him back to a business district, walking behind buildings so that they would avoid contact with a police car that was parked nearby. The men took Cervay to an ATM machine in front of a Kroger's store and forced him to withdraw $300. The men then took Cervay down a walkway that was monitored by a security camera in a local store. The men roughly shoved Cervay and ran away. Cervay was unable to find the police car, so he called 911. *Page 3 
 {¶ 4} An undercover officer who was working in the area had encountered Nicholas Donnerberg and Rice together just before the robbery. The officer said that it had appeared that Donnerberg was concealing something that could have been a firearm, so he stopped the men. The two were identified and searched, but the item the officer had seen was a whiskey bottle. Donnerberg and Rice were allowed to leave. When the officer heard the broadcast of the robbery and the description of the two suspects, he relayed the information about his prior encounter with Donnerberg and Rice. While Cervay was unable to identify the men from photo arrays, the video from the surveillance camera was processed, and Donnerberg and Rice were identified from it.
 {¶ 5} Rice was subsequently questioned by police. He admitted that he was with Donnerberg that night, but claimed that he did not know his name. He said that Donnerberg had told him that Cervay owed him money. Rice claimed that Cervay had voluntarily walked with them to the ATM and withdrawn the cash. He said that he and Donnerberg had then "took off in a trot."
 The Trial {¶ 6} Both Donnerberg and Rice were indicted for aggravated robbery, robbery, and kidnapping. The aggravated-robbery and kidnapping charges each carried two gun specifications. Both defendants waived their right to a jury trial, and a joint trial to the bench was conducted.
 {¶ 7} During Cervay's testimony, counsel for Donnerberg informed the court that her relationship with Donnerberg had deteriorated to the point that she could no longer represent him. The trial court allowed counsel to withdraw and declared a mistrial in Donnerberg's case. Because Rice wanted to call Donnerberg as a witness in his case, the trial court offered a continuance to allow time for *Page 4 
Donnerberg to obtain new appointed counsel. Rice declined the offer of a continuance, insisting that Donnerberg be held in the courtroom for the purpose of testifying. The trial court refused to do so and ordered deputies to return Donnerberg to the jail. During the presentation of his case hours later, Rice asked that Donnerberg be brought back. The trial court declined, indicating that it was unlikely that Donnerberg had obtained new counsel that quickly and that, even if new counsel had been appointed, it was unlikely that counsel would have been able to effectively advise him in that brief period.
 {¶ 8} At the conclusion of the trial, the court concluded that there was not enough evidence to establish, beyond a reasonable doubt, that Rice or Donnerberg had or used a firearm to commit the charged offenses. Therefore, the trial court acquitted Rice on the aggravated-robbery count and all the gun specifications. The trial court found Rice guilty of robbery and kidnapping. He was sentenced accordingly.
 The Indictment Was Properly Amended {¶ 9} Rice first argues, citing State v. Colon, [3] that the trial court improperly allowed the state to amend his indictment to add the mens rea element of recklessly to the robbery charge. In Colon, the court noted in dicta that it was not permissible to amend an indictment to add a mens rea element, saying that "[i]n State v. Wozniak, the indictment did not include the element of intent specified in former R.C. 2907.10, now R.C. 2911.13, breaking and entering. This court held that the prosecutor was not permitted to perfect the defective indictment by amendment, *Page 5 
because `the grand jury and not the prosecutor, even with the approval of the court, must charge the defendant with each essential element of that crime.'"[4]
 {¶ 10} Prior to the Colon decision, but after Wozniak, the court had determined that an indictment could be amended to insert the mens rea element[5] In State v. O'Brien, the court held that "[a]n indictment, which does not contain all the essential elements of an offense, may be amended to include the omitted element, if the name or the identity of the crime is not changed, and the accused has not been misled or prejudiced by the omission of such element from the indictment."[6]
The court concluded that the amendment was proper in its case because "[f]ailure to include the element of `recklessness' in an indictment for endangering children in no way alters either the name, identity or severity of the offense charged."[7]
 {¶ 11} The Colon decision cited O'Brien, but only for the proposition that the element "recklessly" is an essential element. It did not overrule, or even address, O'Brien's core holding regarding the amendment of indictments.
 {¶ 12} Thus, the question is whether O'Brien remains good law afterColon. It does. In State v. Davis, released after the Colon decision, the court cited O'Brien with approval. The Davis decision quoted the rationale we have already noted and stated that "[t]his court [has] held that the indictment was properly amended to include the mens rea element."[8] Significantly, Chief Justice Moyer authored both theDavis and the Colon decisions.
 {¶ 13} In light of the court's approval of O'Brien in Davis, we conclude that the O'Brien holding remains good law. UnderO'Brien, an amendment is proper "if *Page 6 
the name or the identity of the crime is not changed, and the accused has not been misled or prejudiced by the omission of such element from the indictment."[9] Since the amendment in this case did not change "the penalty or degree of the charged offense," and since the record does not indicate, and Rice does not argue, that he was misled or prejudiced by the omission of the mens rea element, the amendment was permissible under Crim. R. 7(D).
 {¶ 14} Rice's first assignment of error is overruled.
 The Kidnapping Conviction Was Proper {¶ 15} In his second assignment of error, Rice claims that he could not have been convicted of kidnapping in this case because the trial court acquitted him on the aggravated-robbery charge. We disagree.
 {¶ 16} In the fourth count of the indictment, the state claimed that Rice, "by force, threat, or deception, removed [Cervay] from the place where he was found or restrained him of his liberty for the purpose of facilitating the commission of a felony, to wit: AGGRAVATED ROBBERY * * *." Rice argues that "since [he] was not found guilty of aggravated robbery, he could not thus be convicted of a kidnapping requiring an aggravated robbery or a purpose to commit an aggravated robbery."
 {¶ 17} But the kidnapping statute does not require that the perpetrator commit the predicate felony; it requires only that the victim be restrained or removed to facilitate its commission. The Ohio Supreme Court has defined "facilitate" as "[t]o free from difficulty or impediment."[10] Thus, a charge of kidnapping under R.C. 2905.01(A)(3) requires a showing that the defendant *Page 7 
restrained or removed someone for the purpose of making it easier to commit another felony.
 {¶ 18} While we are not aware of another decision addressing this precise issue, the Ohio Supreme Court has addressed it in the context of another section of the rape statute. Considering the crime of kidnapping to facilitate nonconsensual sexual activity under R.C. 2905.01(A)(4), the court held that the offense "requires only that the restraint or removal occur for the purpose of non-consensual sexual activity — not that sexual activity actually take place."[11]
 {¶ 19} Following this line of reasoning, we hold that the crime of kidnapping to facilitate the commission of a felony under R.C. 2905.01(A)(3) requires only that the restraint or removal occur for the purpose of the commission of the felony — not that the felony actually take place. For this reason, we reject Rice's argument that his acquittal on the aggravated-robbery charge necessarily required an acquittal on the kidnapping charge.
 {¶ 20} Rice makes a passing argument that the kidnapping, as charged in the indictment, lacked a mens rea element. But the indictment set forth a mens rea element: the purpose to facilitate the commission of a felony.[12]
 {¶ 21} Rice's second assignment of error is overruled.
 The Trial Court Properly Refused to Allow Codefendant Testimony {¶ 22} Rice complains that he was denied his constitutional right to compulsory process because the trial court refused to allow him to call Donnerberg to testify. But, as the state notes, the trial court did not actually refuse. Donnerberg *Page 8 
had succeeded in obtaining the withdrawal of his original attorney during the trial and was awaiting the appointment of new counsel. The trial court offered to continue the case, so that new counsel could be obtained, but it indicated that it would not allow Donnerberg to testify without having the advice of counsel. Counsel for Rice elected not to agree to the continuance.
 {¶ 23} Rice cites a decision from the Tenth Appellate District, which he claims requires us to recognize the error.[13] We disagree. InState v. Ducey, a witness made a statement to police that she, and not the defendant, had committed the offense.[14] Because it believed the witness might offer the same incriminating testimony under oath, the trial court advised her of her rights against self-incrimination and to counsel.[15] The witness chose to consult with an attorney before testifying further, so the trial court appointed counsel and recessed the trial.[16] When trial resumed the following day, the witness did not appear.[17] Despite the public defender's request, the trial court refused either to issue a warrant to enforce the subpoena or to grant a continuance so the defense could file contempt proceedings against the witness.[18] Under those circumstances, the Tenth Appellate District concluded that it was improper to proceed with the trial.[19]
 {¶ 24} This case is distinguishable from Ducey because the trial court in Ducey had refused to grant a continuance to secure the witness's testimony.[20] The court in this case offered a continuance to give Donnerberg an opportunity to speak with counsel before he was subjected to any questioning. In this regard, we note that *Page 9 
the Ducey court found no error in the trial court's decision to recess the proceedings to allow the witness to consult counsel, which is essentially what the trial court attempted to do in this case.
 {¶ 25} The trial court acted reasonably in striking a balance between the rights of Rice to present witnesses on his behalf and to compulsory process, and the rights of Donnerberg to counsel and to avoid self-incrimination. The offer of a continuance, as a compromise between these competing rights, was a proper one. Therefore, we overrule Rice's third assignment of error.
 The Convictions Were Not Against the Manifest Weight of the Evidence {¶ 26} In his final assignment of error, Rice claims that his convictions for robbery and kidnapping were against the manifest weight of the evidence. We disagree.
 {¶ 27} The standard of review for a manifest-weight claim is well established.[21] The basis for Rice's claim is premised on the assumption that Cervay's testimony was not credible and that the trial court should have believed Rice's version of events. But Rice does not explain why this court should discount Cervay's version of events. The discretionary power to reverse should be invoked only in exceptional cases "where the evidence weighs heavily against the conviction."[22]
Rice has given us no reason to conclude that his is one of those exceptional cases.
 {¶ 28} Rice also argues that his involvement was "so minimal" that the trial court could not properly have concluded that he was involved in the robbery. But the record contains ample evidence to support the trial court's determination that Rice *Page 10 
actively participated in the offense. Therefore, we overrule his fourth assignment of error.
 Conclusion {¶ 29} In this case, the trial court correctly allowed the state to amend the indictment to add the mens rea element "recklessly" to the robbery charge, because it did not change the penalty or degree of the offense. Rice was properly convicted of kidnapping because the conviction did not require that the trial court also convict him of the underlying aggravated-robbery charge. The trial court appropriately refused to allow Rice's codefendant to take the stand, because it had offered to allow Rice to confront the codefendant once he had received counsel. Rice declined the offer. And Rice's convictions were not against the manifest weight of the evidence.
 {¶ 30} Having considered all of Rice's assignments of error and rejected each of them, we affirm the judgment of the trial court.
Judgment affirmed.
HILDEBRANDT, P.J., and CUNNINGHAM, J., concur.
[1] R.C. 2911.02(A)(2).
[2] R.C. 2905.01(A)(2).
[3] 118 Ohio St.3d. 26, 2008-Ohio-1624, 885 N.E.2d 917, clarified byState v. Colon, 119 Ohio St.3d 204, 2008-Ohio-3749, 893 N.E.2d 169.
[4] Id. at ¶ 25, quoting State v. Wozniak (1961), 172 Ohio St. 517,520, 178 N.E.2d 800.
[5] State v. O'Brien (1980), 30 Ohio St.3d 122, 508 N.E.2d 144.
[6] Id. at paragraph two of the syllabus.
[7] Id. at 127, 508 N.E.2d 144.
[8] State v. Davis, ___Ohio St.3d ___, 2008-Ohio-4537, ___N.E.2d ___.
[9] O'Brien at paragraph two of the syllabus.
[10] State v. Hill, 70 Ohio St.3d 25, 31, 1994-Ohio-12,635 N.E.2d 1248.
[11] State v. Powell (1990), 49 Ohio St.3d 255, 262, 552 N.E.2d 191, superseded by constitutional amendment on other grounds, as noted inState v. Smith (1997), 80 Ohio St.3d 89, 103, 684 N.E.2d 668; see, also,State v. Wightman, 12th Dist. No. CA2006-12-045, 2008-Ohio-95, at ¶ 33.
[12] See State v. Carver, 2nd Dist. No. 21328, 2008-Ohio-4631, ¶¶ 141-147.
[13] State v. Ducey, 10th Dist. No. 03AP-944, 2004-Ohio-3833.
[14] Id. at ¶ 9.
[15] Id.
[16] Id.
[17] Id. at ¶ 10.
[18] Id.
[19] Id. at ¶ 14.
[20] Id at ¶ 10.
[21] See State v. Jones, 1st Dist. No. C-070666, 2008-Ohio-5988, at ¶ 33, citing State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52,678 N.E.2d 541.
[22] State v. Damen, 1st Dist. No. C-030814, 2004-Ohio-4363, at ¶ 10, quoting State v. Martin(1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717. *Page 1